We'll turn to our next case, which is Anthony Cortese and others versus Skanska Koch. Good morning. Appellant can take the podium. Good morning, judges of the court. Pleasure to be in person once again. Bob Casales member with the law firm of Brock Eichler LLC. On behalf of the appellants, Anthony Cortese, James Carney, Daniel Julio, John Siciliano, Jeffrey Brooks and Mark Label. I know the court's been very thorough reading the paper, so I'll cut right to it. This case basically has two competing district courts on the identical issue before the court today. Same parties even. Some of the same parties, yes. Certainly Mr. Cortese. So what it comes down to is the court today is going to pick one opinion or the other and a line of reason that goes into that decision. We believe Judge Rakoff's decision in the George Washington Bridge project is the more accurate, correct determination of the issue. Sure. But based on the applicable law. Let me ask you about that. So you think, is it your view that Judge Rakoff was right on every single aspect of this case? Yes, it is, Judge. There's a couple of issues that popped up in this case that are not relevant. On the bridge, it was presumed that Lyman was wrong. Judge Rakoff, your position, I take it, is that your use of the term prevailing wage isn't the prevailing wage as decided by the Secretary of Labor under the Davis-Bacon Act, but the prevailing wage between competing union states for the same job, correct? Our position is that the prevailing wage is either Davis-Bacon, because that's what's set forth in the third party contractual provision, in the contract between. Well, let me read to you from Judge Rakoff's decision. This is at page 467. Cortese maintains that the prime contract unambiguously required that when he worked on the New York side of the bridge, he be paid the rate Shostakovich was paying the New York train operator. He leans heavily on the fact that the prime contract requires payment of the so-called prevailing wage and supplements. I'll bet. Join the meeting. Maintaining the prevailing wage on the New York side of the bridge was the rate paid to the members of the New York local. Is that your position here? Yes, because the contract law says that if you work in that territory, you're supposed to receive. And you lost on that. You lost on that in front of Judge Rakoff. He said the contract unambiguously requires payment of at least the Davis-Bacon rate for the locality in which the work is to be performed and not the union negotiated rate. He dismissed that claim. So is this not simply the way you cast your claim in front of us of competition between two rates negotiated pursuant to collective bargaining agreements by two union locals with varying jurisdictional determination? Isn't that what your claim is here? To clarify, the rate that Skanska Koch and the joint venture paid the New York locals was higher than Davis-Bacon. It was New York labor law rate. So it's the New Jersey rate, is it not? No, New Jersey rate's lower than both of those rates. Well, that's not what Judge Rakoff said, but in any event. I don't believe Judge Rakoff ever got into the issue of the rate. By the way, Judge Rakoff merely determined that the New Jersey collective bargaining agreements that my clients are party to and the New Jersey unions had no authority or jurisdiction in New York City. What are you suing for? Are you suing for the Davis-Bacon rate or the New York rate? New York union. We're suing for the rate that the New York union members who worked on the New York side of the bridge span were paid. Because that is what the contractual provision in the contract between Skanska. So you're suing for a rate. You're suing to have the court determine competing collective bargaining agreement rates in respective union jurisdictions, correct? No, there's no competing. If you're saying collective bargaining agreement is competing, my client's collective bargaining agreement for the New Jersey. He's a New Jersey citizen. He's a New Jersey union member. Our argument has always been, I think this is the key issue in the case. The New Jersey unions have absolutely no authority whatsoever to negotiate in New York City, in Richmond County, on behalf of any employer member because they don't have any authority or jurisdiction in Richmond County. So my client's unions' collective bargaining agreements are irrelevant in Richmond County. Doesn't that sound like a labor law question to you? Something related to the National Labor Relations Act? No, it's not. And for the reasons that were articulated by Judge Rakoff, because the only thing you need to use, the collective bargaining agreement is not a basis whatsoever for Mr. Cortese's private contract claim arising out of his third party beneficiary status in the contract between Skanska Koch and the Port Authority. That's not a collective bargaining agreement. I'm sorry. It's just not. You're saying that the agreement entered into between the Port Authority and the contractor delegates whatever the rate to be paid to the respective union rates for the side or whatever rate is hired. Is that it? No, with all respect to Your Honor, no. What we're saying is that the contract, what Judge Rakoff said is the general contract between the Port Authority and the JV set a minimum standard. You want to bring your general contract in this job? You want to work on this job, bidding this job? This is your minimum. You want to pay more? Go pay more. That in no way inhibited the ability of the union on behalf of its members and Skanska Koch to collectively bargain their brains out. But in the end, at bottom, you're saying that the contract between the Port Authority and the contractor provides for a different wage than your clients would be entitled to under the collective bargaining agreement. What I'm saying, and this is the key issue in the case, it's critical. And they're working for that employer. What's critical in this case, Your Honor, is that my client is not part of the New York City collective bargaining agreements. He's not a member of those unions. I'm not asking that. I'm asking a actually simple question. Are you saying that by virtue of the Port Authority and contractor contract, that contract assures your client a wage different than the wage provided for between their employer and the union? And their union. What I'm saying is two things. I'm not trying to be – I'm answering Your Honor's question. The answer is my client is saying he's entitled to at least the Davis-Bacon prevailing wage. That's different than, as you pointed out to Judge Wesley, that's different than the wage and more than the wage provided for between the contractor and the union. It's actually less.  Actually, it's different. We've always taken the position – If it's different, it can be an unfair labor practice. If you overpay this worker instead of that one, that's an unfair labor practice. It's not an unfair – well, first of all, let's assume it was an unfair labor practice. Doesn't Judge Lyman find it was an unfair labor practice? He did. And that's why, obviously, we're here today. Assuming it was an unfair labor practice for Skanska Koch to enter into this contract with Port Authority, they would have committed the unfair labor practice. And we cited three cases within this circuit. I think two were Supreme Court, actually, at State. The violator who commits the unfair labor practice cannot be rewarded by that act. And conversely, the employee that's disadvantaged by that violation of the unfair labor practice can't be damaged by it. So even assuming it was, which your argument was not, because our claims are not based upon any collective bargaining agreement. They're based on an independent contract between the owner and the contractor. Okay? There's still no garment preemption. There's no LMRA preemption. And there's no collective bargaining agreement that my client's claims rely upon because he's relying upon a private contract between the employer. When your client is working over the border on the bridge in New York and is entitled to what you claim your clients are entitled to get in wages, does the employer owe contributions to the health and pension programs of the New Jersey Union? No. And we cited those three cases where work is performed by a union member in a territory outside the geographic jurisdiction of their union. They are not obligated to pay benefits to their union back in the other jurisdiction. So here, Mr. Cortese worked in New York City. He was outside the territorial geography of his New York, New Jersey-based union, which also has jurisdiction over the five southern counties of New York. But the members of the New York union that work for that wage, their employer does make contributions to the union pension plan. Correct. That's correct. I acknowledge that. But that doesn't change the arguments we've made. As a matter of fact, I believe it strengthens it because… It may strengthen it or it may weaken it. But what it does, it seems to me, is to bring you further into the realm of the kind of dispute that the NLRB resolves, especially when you have a situation like this. Every time you have work on a bridge, every time you have work on a tunnel, every time you have work on a highway that's crossing state lines, you're going to have this kind of problem. You may and you may not. And the NLRB would seem to be the place where those principles should be articulated. But no one brought an NLRB action in this case, did they? My client never – no, they did not. No. But because the position was there was no Garmin preemption or LMRA preemption. First of all, with respect to LMRA, there's no contract between the employer and a collective bargaining unit. The contract that my client relies upon is a private, independent contract between a project owner and their general contract. So just based on the statutory provision in the case law, there could never be LMRA preemption. There also cannot be Garmin preemption, okay, because my client's claims, again, for the same reasons, are not based upon a collective bargaining agreement between him and his employer. His union had no jurisdiction or authority whatsoever to collectively bargain on his behalf in Richmond County. And same – he's not a member of the New York Union, the operating engineers, or the other clients that I have are not members of the New York City Union regarding iron workers. So the New York unions had no authority to collectively bargain on behalf of my New Jersey-based clients. Essentially, my clients are no different than a non-union member who came onto this job and was hired by Skanska-Kotz to work. If that was the case, how would my client get dragged into an NLRA jurisdiction or LMRA jurisdiction or collective bargaining? They're not even a union member. I mean, I think it's the best – my client, you can even view him as not even being a union member because he was not a member of the New York City unions that had workers on the New York side of the bridge. He was a member of a New Jersey union that has no jurisdiction whatsoever in the five counties and boroughs of New York City. So they really can't have Garmin preemption apply. His work was outside the territorial jurisdiction. His collective bargaining has no jurisdiction in New York City. So the thing that I find most difficult to comprehend is how this contract between Skanska and the Port Authority, which gives benefits to you – your client wants the benefit of that contract – how that could be an unfair labor practice. That's what I don't get. I don't think it is an unfair labor practice. But isn't that what Lyman found? I agree. And Judge Rakoff says he doesn't see any argument for how it could possibly be a labor practice. So, again, that's why we're here. There's a lot of cases that we cited in our papers that state just because you reference a collective bargaining agreement superficially doesn't automatically make the case an NLRA-based case or LMRA preemption case or a case that has to go before the National Labor Relations Board. It says it's a case-by-case basis. But you would concede that it's an unfair labor practice to pay a worker more than a CBA provides. Not if the worker's not subject to collective bargaining. I understand that. But if they – well, if they are subject to collective bargaining, then it's an unfair labor practice to pay them more than the rate negotiated with the union. Certainly. And Judge Lyman actually relied on one of those cases, the Barbieri case. But that was a case where the employees – they were unionized. That's why Judge Lyman didn't view it as impossible for there to be an unfair labor practice where if your clients got more money than their union had bargained for. It's not impossible if my client was subject to a collective bargaining agreement. My client was not subject to any collective bargaining agreement in New York City for this work because he was the only member of a Jersey union that had no jurisdiction in New York City. But what I want to highlight is in Barbieri, you had unionized employees. Their collective bargaining had jurisdiction in the territory where the overpayment was made to a subset of employees. They performed the work in that jurisdiction. The union found out about it, and they filed a lawsuit. Certainly that is an unfair labor practice, and they had to reduce the wage back to what collective bargaining wage was. No, you can have an unfair labor practice here and there. And the other thing, the question is would this be an unfair labor practice? And if the employer paid some workers more money than a collective bargaining agreement provided, that would be an unfair labor practice. Except, as you argue, they're basically freelance and not members of any union when they cross the border on the bridge. If it's an unfair labor practice, that's a claim between Skanska, Cox and JV and the New York City jurisdiction unions. It's not an unfair labor practice with respect to Mr. Cortese's union or Mr. Cortese individually because Mr. Cortese doesn't have any collective bargaining representation. That's a question coming in on the screen here. I'm sorry, Judge West. That's okay. No, that's all right. That's fine. And I can't see the lights, Madam Presider, so if this is out of time, I apologize. Please go ahead. Who decides when Mr. Cortese goes across the bridge to work? Once he's hired? No, no. Who decides on a daily basis where Mr. Cortese works? Skanska, Cox. Okay, thank you. And JV. Thank you. All right. Your time has long expired. Thank you so very much. Very good argument. We'll now hear from the appellee, Skanska, Cox. Counsel. May I remove my mask? Yes, you may. Thank you. Good morning. May it please the court. My name is Gregory Begg on behalf of Skanska, Cox, Inc. and Skanska, Cox, Kiewit Joint Venture. At every turn, we're diving deep into interpretations of federal labor law, the National Labor Relations Act, and interpretations of the collective bargaining agreements, four of them in this case. That underscores why this case is preempted, either under NLRA preemption principles or LMRA preemption principles. The court below held that counts one through five are dismissed on NLRA grounds. The court decided that because it was dismissed on those grounds, it need not get into whether the issues were dismissed on LMRA grounds. And the grounds that he dismissed it on is that the contract between your client and the Port Authority to pay under that contract was an unfair labor practice. Isn't that what he found? He found that the standard is, if it is arguably an unfair labor practice, the federal court has no jurisdiction. And it was arguably an unfair labor practice to pay the workers from New Jersey, Mr. Cortese and others, more than they would have gotten under their own collective bargaining agreement. It certainly is. It certainly is. As a matter of federal labor law, it is an unfair labor practice for an employer to deal directly with represented employees to pay them more or less. But this contract preceded the CBAs, didn't it? No, the CBAs have been in place for probably 50, 60, or even more years. Skanska Koch and the joint venture have had collective bargaining agreements with these traders for decades. Skanska Koch and the Port Authority were aware of the CBAs when they entered into their agreement, weren't they? I can't speak for... We can assume they've been in agreement forever. They've been in existence forever. We have to believe Skanska Koch and the Port Authority knew about them, right? Presumably. So they were the original lawbreakers. They did not break any law. They would be breaking the law if they decided that the Port Authority contract should take precedence over their collective bargaining agreement, which they did not do. Is the Davis-Bacon rate lower than the New Jersey rate on the New York side? The Davis-Bacon rate, I believe, would be... See, the Davis-Bacon rate in New Jersey is a little bit lower than the Davis-Bacon rate in New York. I gather that, but my question was, if Mr. Cortez crosses the bridge and works in New York and he's paid the Davis-Bacon rate as opposed to the New Jersey rate that he was given under his collective bargaining agreement, which rate is higher? That's a good question, and we don't know because we're here on a motion to dismiss. Well, Judge, were there any New Jersey employees in New Jersey? Did the New Jersey agreements come into play in Judge Rakoff's decision at all? Did they come into play? Well, it's our position that what governs exclusively the plaintiff employees are the New Jersey collective bargaining agreements. Of course, I know that. That's not what I asked you. It would be helpful if you answered my question. I'm trying. The question was, were there any New Jersey employees that were involved in working on the New York side? Yes. Okay. And were they Mr. Cortez and others? Mr. Cortez and the other named plaintiff Sear? Yes. And Mr. Cortez lost his prevailing wage claim in front of Judge Rakoff because he said the union rate, the New Jersey rate, was higher than the Davis-Bacon rate and that that would always be the case, and therefore if he wanted he was suing for something that wasn't a higher rate. Well, that's why I think the plaintiff shifts the focus and says that they're entitled to the New York collective bargaining agreement. Right. And so his claim now is he's entitled to a collective bargaining rate for a union of which he's a member on the New Jersey side, but he says that that union has no jurisdiction, that unit has no jurisdiction, but he wants pursuant to an agreement you're buying it into with the Port Authority to somehow impose the New York union rate. That's exactly right, and there's no basis for that, and that was held by Judge Rakoff. Well, he didn't work in New York, did he? Well, that sounds to me like an attempt sorting through competing collective bargaining agreement rates. Four of them. Now we're talking about four different collective bargaining agreements and interpretations of them, and how one union's jurisdiction ends and begins and another ends and begins, and what was bargained for on this particular project. This is just thorough and rife with NLRA and LMRA issues. But didn't the contract between Skanska Koch and the Port Authority provide that if anyone worked in New York, they got the New York prevailing rate? It says that they get the New York Davis-Bacon rate. It says nothing about getting a collective bargaining agreement rate. Right, no, but they would get the Davis-Bacon rate if they worked in New York. That's what the contract says. It doesn't say only if they're operating under a New York CBA. It doesn't say anything. Oh, that's true. So that's the only right Mr. Cortese is trying to vindicate here, isn't it? Well, he has no right to vindicate it in this court because he's asking for this court to enforce his claim. His common law claim for breach of contract. The essence of that is we, Skanska Koch, would be committing an unfair labor practice by paying employees in variance with the applicable collective bargaining agreement. But you made this agreement way before. When you were trying to get this contract, you promised that that's what you would do. That's between the Port Authority and Skanska Koch, Inc. The issue here is what takes precedence. That's the very essence of this case. We have competing laws, a state common law and federal law. And the law of preemption is federal law must prevail, period. Did anyone bring an NLRB action in this case? No, and it would be time barred at this point. There's a six-month statute of limitations. So the preemption is just a fiction, right? I mean, it's preempted by NLRB, but it's a fiction because no one went to the NLRB. Well, that's their fault. But you would have brought it, wouldn't you? You're the one charged with the unfair labor practice. Why would I? Why would you do it? Indeed, that's my point. I'm sorry, I don't understand. Well, isn't the unfair labor practice the contract you entered into with the Port Authority? It's a good question. It may very well have been an unfair labor practice for us to enter into that agreement. But you're charged with the unfair labor practice. No one has charged us with that, but that's the exclusive remedy. If we did that, and that is an unfair labor practice, you must either exhaust your remedies under the collective bargaining agreements or take your claim to the National Labor Relations Board. And no one has taken that claim? No. Let me take it from a slightly different point of view. No one has taken this to the National Labor Relations Board. There's no decision there. No one is interested in doing that, evidently. Your adversary is saying, well, your client entered into a contract. His clients are third-party beneficiaries of that contract. It refers to them expressly and says that they may sue. Indeed, they may have this very lawsuit. So I'm not sure how you can assert that because it would have been an unfair labor practice, which no one has charged for you to enter into that contract, that that would release you from your obligation when your contract, if your contract created a third-party beneficiary right in your adversary's clients. We're guided here, and the court must be guided by controlling U.S. Supreme Court decisions, which are cited in the briefs, Garmin, CATS, Caterpillar, particularly the J.I. Case case, which exactly says whether it's a benefit to the employee or a detriment to the employee, changing the terms of a collective bargaining agreement are at least arguably an unfair labor practice and or require interpretation of collective bargaining agreements. Therefore, federal court is not the place to go in the first instance. What do you say to your adversary's argument that this does not involve the only collective bargaining agreement that their union, that was entered into by their union because the territory of that was New Jersey, and this work took place in New York, and they're free to work in New York. They could moonlight. They could, if they had worked 20 hours a week in New Jersey under that contract, they can work 20 hours a week in New York. They could sell hot dogs, or they could drive trucks. There's numerous flaws with his argument. First of all, it was waived. That was never raised until after oral argument below, and Judge Lyman in footnote four said that's waived. Second, and in their complaint, they recognized that employees had the right and authority to work in one jurisdiction or the other. Third, there's two pieces to that argument. One is he says, well, because the contract doesn't cover it, New York, which is an interpretation of a collective bargaining agreement, there's two pieces of that, that therefore they weren't represented by their union when they worked there. There's nothing in the contract that says we only represent these employees when they work in New Jersey. That is an entire misreading of the National Labor Relations Act. A union represents its employees, period, for the purposes of collective bargaining regarding all terms and conditions of employment. There is no limitation in these collective bargaining agreements, which I maintain this court should not even be looking at because of waiver and preemption issues, but if you do, there's no limitation on the representation. Then what was the purpose and import of the provision in the contract that your client signed that seemed to have made your adversary's clients into third-party beneficiaries? I'm sorry? What was the purpose of that contractual provision that gave them an entitlement to sue? You'll have to ask the court. I have my own experience. I have some understanding about court authorities' labor relations. You have a question coming in. I would suspect compliance with the Davis-Bacon Act because the prevailing wage is the requirement with regard to any public works project under both state law and federal law. Well, and because this was between the two states, I suspect under the Davis-Bacon Act, that's why it specifically references that. Just so I can appreciate, and maybe the answer is not apparent in this record, is the Davis-Bacon rate in New York higher than the New Jersey union rate paid for teeth when he works on the New Jersey side? The Davis-Bacon rate in New York is higher than the New Jersey Davis-Bacon rate or CBA rate? No. No. Listen to the question. I'm sorry? Is the Davis-Bacon rate in New York for an operating engineer, is it higher than the New Jersey rate, the rate that Cortese gets pursuant to the collective bargaining agreement as negotiated by his union for his work under that collective bargaining agreement? Likely, yes, but now we're into a whole other can of worms because one of the questions is which version of the Davis-Bacon rate applies here? And now you're into issues of prevailing wage law. You don't have to go any further than that. So you said you have an inkling of an idea why Skanska entered into this contract with the Port Authority. They did it to get the contract, right? They wouldn't have gotten the contract if they didn't enter into this contract with Port Authority. It could very well be that the Port of this is boilerplate language and the Port Authority— Our life is boilerplate language. What are you saying? We should ignore it? I think that you asked me my opinion of perhaps why this is there. There is no doubt, at least in my mind, that the Port Authority and every single union on the project and every single contractor on the project and every single employee on the project except Mr. Cortese understood that this is a union project. You're governed by your collective bargaining agreement, as you always are, and now we're in a situation where it's by state and there's a little bit of friction between unions arguing with each other over who gets what work and such, and it was worked out, and no one raised an issue. And to the extent that there are issues raised, they are rife with union representation issues, interpretations of collective bargaining agreements, interpretations of federal labor law. You asked the question, Your Honor, which fund would you contribute to? That's a very good question. That is a struggle between which— The answer seems to be no fund. I wouldn't speculate here. That's the answer that I got. He's seeking fund contributions. He's seeking payment of fund contributions, to which local I'm not really sure. Are you adopting the answer implicit in one of Judge Wesley's questions that the purpose of the clause is to comply with the requirements for contribution to projects from federal government, state, and city that Davis-Bacon be complied with, as well as the Little Davis-Bacon Acts? It very well may be. I don't know on this record whether it's clear that prevailing wage— Statutory prevailing wage law applied or not. If it did, he would be barred because there's an exclusive remedy provision under to pursue prevailing wage claims. And I suspect that's why the plaintiffs has gone to great lengths to structure their case and maneuver around controlling case law and decades of Supreme Court decisions to get around all of that. Thank you, counsel. Thank you. I will hear from Mr. Kasula since two minutes rebuttal. Thank you, Your Honor. I just want to clarify for Judge Wesley, in case I didn't do a great job, I do acknowledge that Judge Rakoff dismissed my client's statutory prevailing wage claim. Judge Rakoff obviously did not dismiss the contractual claim arising out of the third-party beneficiary provision. So let's be clear. Let's be clear now. Tell me. Contractual. Is it your client's position that he's entitled to the New York union rate when he works on the New York side? Yes, because the contract provision states that. Yes. I just want to explain why the contract. He's not suing for the Davis-Bacon rate. He's suing for the New York rate negotiated by the union representing New York operating engineers for work on the New York side. The problem is I think Davis-Bacon is the same rate as the union rate. That's the problem with what we gleaned. Davis-Bacon actually. Does the union, does the CBA reference Davis-Bacon? Which union? Which union agreement? The New York union. Does it reference David-Bacon in setting rates? No. No, I believe it references prevailing wage. It doesn't say anything about Davis-Bacon because if it's not a federal project, then why would they pay Davis-Bacon? They would pay local rates. But the point is the contract, it doesn't matter if it's Davis-Bacon or union rate because the language is that if you work in the New York City territory, as a third-party beneficiary employee, the work you do for your trade, you have to be paid the same amount as other people in that locality within that trade. So it's Davis-Bacon. It says the prevailing wage as determined by the secretary of labor. Correct. Minimum Davis-Bacon. Well, so the secretary of labor determines the Davis-Bacon rate, which can be very substantially different from a union rate as negotiated pursuant to a collective bargaining agreement. And according to Judge Rakoff, at least on the union side, the New York union rate is higher than the Davis-Bacon rate. I believe New York is New York City prevailing wage. It's the wage that applies to them, which is the highest of all of them. Well, that's why I asked. I wanted to be clear what you were suing for because your complaint goes, always has or. It says the prevailing wage or the prevailing wage established by the Davis-Bacon rate. And so I want to be clear what you're suing. Correct. Because we didn't know what the rate was because you hadn't laid our eyes on the collective bargaining agreement or the Davis-Bacon Act that applied to that territory. But we just want what the workers in New York got. Whether it's Davis-Bacon, whether it's prevailing wage, whether it's a third number, whatever that number is we're looking for. You want what an operating engineer who is a member of the New York local gets pursuant to the New York local's EPA, collective bargaining agreement. That's what you want. Essentially, yes. Thank you. And now I'd like to point out Mr. Begg has acknowledged, I believe, that his client, if there wasn't a violation or an unfair labor practice, his client would have been the violator. And he says, I somehow circumvent or go around case law. It's actually his client. I have on page 18 of my brief, I cite the Supreme Court opinion, which Mr. Begg cites, J.I. Case Company versus NLRB. And in that case, the Supreme Court, which governs all courts in the federal circuits, states that, quote, it may not be the basis of advantage to the violator of the act nor of disadvantage to the employees obtained as a result of an unfair labor practice. So I think Your Honor has both hit the nail on the head. He wants to come in and say it's an unfair labor practice that his own client committed in contracting a port authority. Well, let's ignore the Supreme Court authority directly on point if there's a violator, and let's punish my client and reward his client. We're talking like $10 million plus in wages here that these people didn't get paid. This is not a minor case. This is not five or six people. What emanated is a distinction. One distinction Judge Wesley wanted me to reference earlier about the two cases is the Bayonne Bridge case preceded the GWB case, and he references how you had people working right across from each other on both sides of the span, New Jersey laborers and IR workers here, New York laborers, IR workers here, and they're staring at each other, and the New Jersey laborers know that the New York laborers are getting a lot more than they are, and it created a lot of animosity on the job. So then when Skansicotch takes on the GWB project subsequently, cleverly, and this is public record in the case before Dreykov, Skansicotch makes a separate side deal with the IR workers, the New Jersey IR worker union, to make a separate side deal with them, so that the New Jersey IR workers working on the New York side of the bridge get a higher rate than they were getting under the New Jersey collective bargaining agreement. So Skansicotch knew what they were doing on the Bayonne Bridge was wrong. So that's an unfair labor practice. But that's on a GWB job. Well, I don't know if it's unfair labor. It's not an unfair labor practice because the New Jersey unions agreed to that on that project. That seems to confirm that it is a labor matter because they negotiated it with the local, even though the local was going to send its employees across the bridge and outside of its jurisdiction, you pardon me, jurisdiction continually, and somehow they were able to do it. That seems to confirm that this should have been in front of the NLRB. No, Judge, because that's on a GWB case. That's not on this case. And there were no, there was no, there were no, there were no iron workers involved in a class in the GWB. So that was a response to them. They encountered the problem before. I'm sorry, Your Honor. The labor law is different for iron workers than it is for operating. No, Judge, but they actually, their pay in that situation emanated from a collective bargaining agreement. My clients, my clients claim here, my clients claim here has nothing to do with collective bargaining. The only reference to a collective bargaining agreement involving my client's claim is looking at the. Could it have been? Sure, it could have been, but it wasn't. Just like the iron workers did. On GWB, it could have been. If it could have been, where should its absence have been litigated? Well, what would the unfair labor practice be? I'm just asking. There would have to be, there would have to be a subset of employees that participated. On the GW Bridge, on the GW Bridge, if the iron workers union, or if you hadn't, if you didn't pay the rate that was promised under this DBA, where would you go? I think you'd have to go, well, if they still have a statutory prevailing wage, I think they would go to. Oh, no, no, that's not what I asked you. I asked you specifically. You referenced the iron workers union. That negotiated, the New Jersey unions negotiated for what happened when a New Jersey iron worker crossed the bridge and worked on the New York side. They got paid the New York rate. You pointed that out. And if Shotscott had not paid that, negotiated by the CBA, where would the dispute about the payment of that rate go? In that specific circumstance, it's certainly an unfair labor practice. Yeah, but that's not the facts we have here today. Okay, all right. I acknowledge that. I certainly acknowledge that. And if they paid a subset of those iron workers more, then that would be an unfair labor practice. Where did they get the jurisdiction to do that? They didn't have the jurisdiction to negotiate a rate across the bridge. Your whole argument. That I wasn't prepared to address today, but it's, you know, I have to think about that. You told me about Jeffrey Kauf's decision. I read it. I read it line for line because I thought it was very interesting. Yes. And look, it's a very interesting case. There's two lines of thought. There's two competing cases below. And that's why we're here. I mean, there's really no ifs, ands, or buts about it. That's why this court gets to break the tie, so to speak. I have the highest degree of respect for my adversary. But when I hear things like somehow we waived this argument below, I mean, I raised it in my reply brief on page 11. And I quote directly from Judge Rakoff's case, opinion, quote, plaintiffs arguing in their brief for the first time that labor occurring outside the geographical boundaries of the CBA is not subject to benefits payment to the union. So I did raise it below. Mr. Becker, for some reason, wants to come here and say the argument was not raised below. The argument was always raised. It was raised before Judge Rakoff, obviously. It was raised here below. And I think the court obviously did a lot of work getting ready for this case. It's a case of paramount import for a lot of different people. Unless there's another question that your honors have for me, I thank everyone for your time and courtesy today. Thank you. Thank you. Thank you both. Thank you. Thank you. Yes. We don't allow rebuttal. But go on. Okay. Judge Wesley, the construction agreement says that you must pay the Davis-Bacon rate as determined by the engineer. Oh, that's right. You're right. I apologize. You're right. There is nothing in the complaint that says the engineer and the engineer is the engineer for the project, the Port Authority engineer, that the engineer determined some rate that's at variance with the collective. Thank you. The other point, if I may, one brief point. The collective bargaining agreements that are in the record, if you look at the language, they most certainly do contemplate and deal with payment of wages and representation of employees when they work on bi-state jobs. It is factually incorrect for him to say that the CBAs don't cover work in multiple jurisdictions. They do. And I can cite the record if you would like. No, that's enough. Thank you. We usually don't allow such rebuttal. Thank you very much, both of you.